**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

v.                                                                                                  Case No. 8:03-cr-77-T-30TBM

**SAMI AMIN AL-ARIAN,** *et al.*

## ORDER

This cause came on for consideration upon an Emergency Motion for Leave to Intervene and For Relief from Prior Restraint (Dkt. #1049) filed by various news media outlets[1] interested in reporting on developments in this highly publicized criminal case. These media outlets have requested that the Order of May 11, 2005 (Dkt. #1044), which subjects to contempt sanctions any person that visually depicts or verbally describes any of the jurors in this case in a way that would reveal the jurors' identities, be vacated on several grounds. Among other things, the media outlets contend that this Order constitutes a "prior restraint" on speech which unconstitutionally infringes on their First Amendment rights.[2]

---

[1] The media outlets include Media General Operations, Inc., Tampa Bay Television, Inc., New World Communications of Tampa, Inc., Weekly Planet, Inc., and Times Publishing Co.

[2] The media outlets also contend that the Order must be vacated because its terms are vague and overly broad, it was entered without providing all interested parties with notice and an opportunity to be heard, and it was of unlimited duration. Because all of these alleged infirmities will have been addressed by the Court upon issuance of this Order, this Court has not addressed the validity of these claims.

A hearing was held on May 16, 2005, to address the Motion and the issuance of a subsequent order that might alleviate those concerns addressed by the media outlets in their Motion. The media outlets were informed that the terms of the May 11th Order were quite limited, extending only to information that would effectively undermine this Court's decision to maintain an innominate jury during the trial. Reporting on the sex, race, age, religion and any other demographic trait remained permissible, as did reporting on all other information produced and events that will occur during the trial which do not relate to the identity of the jurors. Notwithstanding these assurances, the media outlets persisted and made clear that publication of the names of the jurors in this case was their principle concern. Having heard the competing arguments of both the news media and the Defendants presented in briefs and at the May 16th hearing, this Court finds that its Order of May 11th should be vacated and supplanted.

The Order of May 11th was entered on the eve of *voir dire* and was intended to prevent members of the public from rendering ineffective this Court's previous decision to use an innominate jury. The use of an innominate jury was found to be necessary in this case because the Defendants' Sixth Amendment rights to a fair trial were being endangered by the widespread news coverage the case had continued to receive.[3] Although some of the Defendants initially balked at the Court's decision to use an innominate jury, their objections

---

[3] An innominate jury was also considered necessary to prevent members of the public from otherwise subjecting the jurors in this case to unwanted confrontations, harassment and intimidation. These concerns are both independent and related to the concerns that the Defendants' rights to an impartial jury is in jeopardy.

were withdrawn after an examination of approximately three-hundred and fifty (350) completed juror questionnaires demonstrated that some members of the community already formed opinions about the case generally and the guilt or innocence of the Defendants specifically.

Notwithstanding the undisputed determination that the Defendants' Sixth Amendment rights to a fair trial would be endangered if the identities of the jurors become known to the public, the media outlets intend to publish this information and contend that this Court is without legal authority to issue an order protecting juror identities from being disseminated. The media outlets' position is based on two erroneous presumptions: that alternatives to such an order exist that would adequately address the threat to the Defendants' rights to a fair trial and that such an order would be ineffective in protecting against this threat.

The Supreme Court recognized in Nebraska Press v. Stuart, 427 U.S. 539 (1976), that the prior restraint on speech protected by the First Amendment is "one of the most extraordinary remedies known to our jurisprudence." 427 U.S. at 562. It also acknowledged, however, that "tensions . . . between the right of the accused to trial by an impartial jury and the rights guaranteed others by the First Amendment" can exist, and that this tension is becoming more extant as the "speed of communication and the pervasiveness of the modern news media" increase and proliferate. Id. at 548, 551.

When faced with tension between these two equally esteemed constitutional rights, courts must determine whether alternative measures would be likely to protect against the threats to jury impartiality and whether the restriction on speech would effectively prevent

such threats. Id. at 562. If no other effective measures exist to remedy the tension and the prior restraint would be effective in securing the defendant's right to an impartial jury, the prior restraint may be instituted.

This Court's finding that the Defendants' right to an impartial jury would be endangered if the jurors' identities become public knowledge because of the media's pervasive coverage of the case and the effects such coverage has on the public is beyond dispute. The media excess surrounding this case is illustrated by the two hundred and eleven news reports about the trial that were published by U.S. news sources within the last ninety days,[4] as well as the press' attempts to take pictures of and discuss the case with some of the initial prospective jurors that traveled to the courthouse for the commencement of *voir dire*. The juror questionnaires and the evidence Defendants have offered in support of the motion to change venue demonstrate that large swaths of the public are influenced by media accounts of the case, form conclusions about the Defendants' guilt or innocence, and regularly discuss the news reports and their opinions with friends and neighbors. Indeed, neither the Government, the Defendants, nor the media outlets have expressed any doubt as to the existence of this "clear and present danger." See id. at 563.

Although the media outlets assert that other alternative measures exist which would eliminate this danger, this Court is not convinced of these proposed solutions. The media outlets contend that this Court could sanction the public from discussing the case with the

---

[4] This information was obtained by performing a search in the "United States News" database on Westlaw's online legal research service.

jurors or subject the jurors to additional security measures.  The suggestion that friends, neighbors, co-workers and other persons holding impassioned views would not likely confront and pressure the jurors if the jurors' identities are disclosed in newspapers, televisions, internet web sites and internet chat rooms ignores the visceral reaction to this case that a considerable portion of the public already has demonstrated.  With respect to additional security measures, the Defendants have objected to the media outlets' proposal on the grounds that the presence of even more security personnel would only exacerbate the problem of jury impartiality.  This objection can not be summarily dismissed as meritless.

     The Supreme Court in <u>Nebraska Press</u> also mentioned as alternative measures postponement of the trial; warnings to the press, the parties and the jurors; sequestration; temporarily closing of the proceedings; and change of venue.  <u>Id</u> at 563-565.  Some of these measures have already been utilized.  While the employment of other measures might provide additional protection against jury contamination, this Court does not believe that they would eliminate the danger to the Defendants' Sixth Amendment rights in light of the pervasive media coverage that follows this case and the particular facts which relate to terrorism, the Israeli-Palestinian conflict, top-secret government wiretaps, and many of the contemporary religious, social, political, and legal discussions taking place in homes and businesses across the country.  Other measures such as jury sequestration are simply not realistic in light of the anticipated length of the trial, estimated to last from six months to one year.

When combined with other measures, a temporary restriction on the dissemination of juror identities offers the only realistic solution to preserve juror impartiality in this case. Because the Defendants' Sixth Amendment rights to an impartial jury can not be temporarily suspended or limited in part, an order prohibiting the temporary disclosure of information that Chief Justice Rehnquist noted in <u>KPNX Broadcasting Co. v. Arizona Superior Court</u>, 459 U.S. 1302, 1308 (1982) to be of relatively slight significance is warranted in this extraordinary case. It is therefore

ORDERED and ADJUDGED that:

1. The Emergency Motion for Leave to Intervene and For Relief from Prior Restraint (Dkt. #1049) is **GRANTED in part** and **DENIED in part**.

2. The Order of May 11, 2005 (Dkt. #1044) is hereby **VACATED**.

3. To protect the impartiality of the jurors in this case, no photographs, sketched drawings, or other images of the jurors or prospective jurors inside or outside the courtroom may be created.

4. No written or verbal descriptions of any information that would assist a person in determining the identity of a juror or prospective juror may be made. This includes, among other things, the physical description, telephone number, address, employer name and membership affiliations of each juror or prospective juror. The disclosure of the sex, race, age, religion and any other demographic trait of a juror or prospective juror, however, is permissible. A general description of the job title (i.e., attorney, engineer, baker, etc.) of a juror or prospective juror is also permitted.

5. This Order will remain in effect until the jury returns a verdict.

6. Violation of this Order shall be subject to contempt sanctions by this Court.

**DONE** and **ORDERED** in Tampa, Florida on May 17, 2005.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record
United States Marshal

S:\Odd\2003\AL-ARIAN\Motn Disclosure of Juror Identities.wpd